[Civ. No. 39871. First Dist., Div. Four. Feb. 24, 1977.]

Estate of MAR ESHAI SHIMUN XXIII, Deceased.
THEODORE D'MAR SHIMUN, Petitioner and Appellant, v.
EMAMA MAR ESHAI SHIMUN as Administratrix, etc.,
Contestant and Respondent.

### COUNSEL

Richard T. LemMon for Petitioner and Appellant.

James N. Ono and Grace M. Kubota Ybarra for Contestant and Respondent.

### OPINION

**EMERSON, J.**\*—Appellant Theodore D'Mar Shimun (hereafter referred to as Theodore) appeals from a judgment denying probate to a document entitled last will and testament of Mar Eshai Shimun XXIII (hereafter referred to as decedent) and appointing as administratrix of the estate respondent Emama Mar Eshai Shimun (hereafter referred to as Emama), decedent's widow.

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Decedent had held the office of Patriarch of the Church of the East. When he married, he broke a long-standing tradition of the church that the patriarch remain celibate. This caused a serious rift not only within the church, but between him and members of his family, including his brother Theodore, appellant herein.

Prior to his marriage, decedent had executed a will, conceded to be valid in all respects, in which he designated Theodore as alternate executor. The named executor having renounced, Theodore petitioned for admission of the will to probate, and for the issuance of letters testamentary to him as executor.

Decedent made no later will. There is no dispute upon this appeal that Emama and her two children are the lawful widow and surviving issue of the decedent and that since decedent married after making the will and there is no provision in the will for any of them, the will will be revoked by operation of law as to Emama and the children. (Prob. Code, §§ 70, 71.)[1] The entire estate will go to them.

Emama, as decedent's widow, petitioned for her appointment as administratrix, alleging that decedent's will was, by operation of law, revoked in its entirety. Her petition and that of Theodore were heard together. The court issued a judgment denying probate of the will, declaring that the decedent died intestate and appointing Emama administratrix of the estate. Theodore appeals.

It is well established that where a will is partially revoked by a subsequent marriage, the balance of the will remains effective, and the court must appoint the named executor rather than the widow. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 293, p. 5784; *Estate of Russell* (1941) 43 Cal.App.2d 319, 324 [110 P.2d 718].) A similar

---

[1]Probate Code section 70 provides: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received."

Probate Code section 71 provides: "If a person marries after making a will and has issue of such marriage, and any of the issue survives the maker, or is born after the death of the maker, the will is revoked as to such issue, unless provision has been made for such issue by some settlement, or unless such issue are provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of such revocation can be received."

All further statutory references are to the Probate Code, except where otherwise noted.

rule applies where the will is revoked as to pretermitted children. (*Estate of Philippi* (1945) 71 Cal.App.2d 127, 133-134 [161 P.2d 1006].)

Emama argues, however, that because the decedent has left both widow *and* children as pretermitted heirs, the entire estate will devolve upon them and therefore the will has been *totally* revoked. She compares the instant situation to one where the decedent makes a subsequent will wholly inconsistent with a prior one, but with no express revocation. Under section 72, the prior will is deemed to have been revoked and the mere naming of an executor in the prior will need not be given effect by the court where the dispositive provisions of the subsequent will are otherwise wholly inconsistent.[2] Since the only effective provision in the decedent's present will would be the naming of an executor, it is urged that the trial court acted properly in rejecting the entire will and declaring the decedent an intestate. The argument is without legal foundation.

Section 72 does not refer to revocation of a will by marriage. It relates to revocation by the making of a subsequent will containing provisions wholly inconsistent with the terms of a prior will.

■ Pretermitted heirs take their shares independently of the will. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 13, p. 5536; *Estate of Tassi* (1961) 196 Cal.App.2d 494, 502 [16 Cal.Rptr. 616].) Consequently, they have no standing to contest the probate thereof. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 391, p. 5850; *Estate of Philippi, supra,* 71 Cal.App.2d at p. 133.)

Essentially the same argument as Emama makes here was disposed of by the court in *Philippi, supra*: "Appellant argues that the pretermitted children of deceased will take the entire estate by reason of the statute; that such estates vested in them immediately upon the death of their father, leaving nothing upon which the will can operate; that, therefore, the purported will is a complete nullity and should not be admitted to

[2]Section 72 provides: "A prior will is not revoked by a subsequent will, unless the latter contains an express revocation, or provisions wholly inconsistent with the terms of the prior will. In other cases the prior will remains effectual so far as consistent with the provisions of the subsequent will; but the mere naming of an executor in the prior will need not be given effect by the court when the subsequent will is otherwise wholly inconsistent with the terms of the prior will, the intention of the testator in this respect being left to the determination of the court."

probate. [¶] That the property of a deceased father vests in his pretermitted children upon his death, there being no other lineal heirs, is not an exact statement of the law. The estate vests, subject to his debts, expenses of last illness, funeral expenses and expenses of administration. Administration of an estate is necessary in order to determine the property remaining to be distributed to the heirs. . . . [¶] [P]retermitted children do not take under the will but under the statute. . . . The pretermitted child may assert his right to the proper portion of his ancestor's estate at the time of the hearing of a petition for its distribution (*Estate of Price,* 56 Cal.App.2d 335 [132 P.2d 485]), or by proceedings in equity (*Estate of Klepsch,* 36 Cal.App.2d 483 [97 P.2d 987]), but may not contest the probate of the will." (*Id.,* at pp. 133-134.)

■ Having found the will to be validly executed and having received the sworn declaration of one subscribing witness, the lower court should have admitted the will to probate. (§ 329.) The claims of Emama and her children may properly be made at the distribution proceeding, but cannot operate to prevent the will itself from being probated.

■ The legislative intent behind sections 70 and 71 is clearly to provide that the existence of a pretermitted heir only revokes the will as to his or her intestate share *pro tanto* and that other provisions of the will, including the appointment of an executor, are to be left operative. (*Estate of Russell, supra,* 43 Cal.App.2d 319, 322; *Estate of Tassi, supra,* 196 Cal.App.2d 494, 502.) Indeed the amended language "as to the spouse or issue" was added by the Legislature in 1931 to remedy the prior inequity of allowing *total* revocation of a will where the estate was subject to the claims of a pretermitted spouse or child. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 13, pp. 5535-5536; see *Estate of Ryan* (1923) 191 Cal. 307 [216 P. 366].) The trial court erred in deriving from the fact that no property may pass under the provisions of the will, the conclusion of law that decedent died intestate.

■ Although we have determined that Theodore is entitled to appointment as executor under the will, it is necessary to discuss a further reason articulated by the court in appointing Emama as administratrix. As a basis for such appointment the court found that Theodore was not competent to act as executor. The finding of incompetency was, in turn, based upon what the court termed, in its memorandum of decision, Theodore's "understandable feelings toward Emama and her children. . . ." This is not one of the statutory grounds for disqualification of an executor. (§ 401.)

The rule is universal that the person named as executor in a will has the right so to act in the absence of statutory disqualification. (*Estate of Buchman* (1954) 123 Cal.App.2d 546, 554 [267 P.2d 73, 47 A.L.R.2d 291]; *Estate of Wellings* (1923) 192 Cal. 506, 510 [221 P. 628].) The grounds for disqualification to act as executor of a will are set forth in section 401, namely (1) under the age of majority, (2) convicted of an infamous crime, or (3) adjudged by the court to be incompetent by reason of drunkenness, improvidence or want of understanding or integrity. All of the testimony purporting to challenge Theodore's capacity to act as executor was directed toward establishing only that Theodore harbored ill feelings toward the decedent and Emama subsequent to their marriage. None of it tended to show Theodore's incompetency on any of the aforementioned statutory grounds.

■ Nor was the lower court entitled to declare the decedent an intestate because "equity demands it." In so doing, the court interpreted the discussion in 24 California Jurisprudence, Third Edition, Decedents' Estates, section 95, page 184 as providing authority for it to sit not only as a probate court but as a court of equity. In his memorandum of decision, the judge stated: ". . . the Court, *beyond its probate jurisdiction,* can and will use its jurisdiction in equity to do that which should be done. . . ." (Italics added.) This conclusion is erroneous.

A probate court has no general equity jurisdiction. (*Guardianship of Kemp* (1974) 43 Cal.App.3d 758, 762 [118 Cal.Rptr. 64, 74 A.L.R.3d 1202].) Its jurisdiction is limited to "only those powers which are granted [to it] by statute and such incidental powers, legal and equitable, *as enable it to exercise the powers granted.*" (*Estate of Muhammad* (1971) 16 Cal.App.3d 726, 731 [94 Cal.Rptr. 856]; italics added.) The portion of California Jurisprudence, Third Edition, cited by the court makes clear that the probate court's inherent equitable powers come into play "whenever the provisions of the Probate Code are inadequate to enable the court sitting in probate to accomplish all that a court of equity could accomplish in administering and settling a decedent's estate . . . ." (24 Cal.Jur.3d, § 95, p. 184.) In the instant case, the provisions of the Probate Code are adequate, and mandate that the will should be probated with Theodore appointed as executor. Since refusal to issue letters to Theodore on grounds of incompetency was improper and no dispute exists as to the valid execution of the will or of Theodore's nomination as executor, Theodore is entitled to the appointment.

The judgment is reversed. The superior court, sitting in probate, is directed to admit the will of the decedent to probate and to issue letters testamentary to appellant as executor.

Caldecott, P. J., and Rattigan, J., concurred.